IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

JAMES BRADSHAW                                                                         PLAINTIFF

VS.                                    6:09-cv-06045-JLH

FFE TRANSPORTATION SERVICES, INC.,                                      DEFENDANTS
AND DAVID A. BOOKER, SR.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION IN LIMINE TO LIMIT TESTIMONY OF
DR. MARK FLOYD AND DR. TERRY HUTSON**

The Defendants untimely seek in limine to limit the testimony of two of the Plaintiff's treating physicians, Dr. Mark A. Floyd, M.D. and Dr. Terry Hutson, D.C., on the basis of surprise and noncompliance with Fed. R. Civ. P. 26(a)(2). This last-ditch effort makes the claim, raised less than weeks ago for the first time, that the Plaintiff made a procedural error in his expert disclosures before the first trial of this matter. The Plaintiff disputes that his expert disclosures were inadequate. Even if true, however, this alleged error was waived when the defense failed to make its surprise argument in a timely manner before or at the first trial. Thus, the defense waived any alleged deficiency with regards to the Plaintiff's compliance with Fed. R. Civ. P. 26(a)(2). Furthermore, by waiting until the eve of the second trial to raise this new allegation, the defense failed to give the Plaintiff a reasonable opportunity to cure the alleged deficiency. For these two reasons, the *Brooks v. Union Pacific Railroad* case is distinguishable, and the Defendants' objections should be deemed waived.

The defense already had all of Dr. Floyd and Dr. Hutson's records before Dr. Floyd's deposition and the first trial. These include a record from Dr. Floyd concerning his diagnosis that the Plaintiff's injuries were caused by a motor vehicle accident; and not one, but two narrative

reports from Dr. Hutson. The defense also had it is possession the records of other doctors to whom the Plaintiff's treating physicians referred the Plaintiff for further testing and evaluation. The records of the other treating physicians who received these referrals are the subject of a stipulation as to authenticity, filed for record as Doc. 43, which renders those medical records exempt from any hearsay objection pursuant to Fed. R. Evid. 803(4) and (6). The Plaintiff's treating physicians properly testified about the content of medical records upon which they based treating decisions. *See* Fed. R. Evid. 703, Notes of Advisory Committee on Rules.

1. **The Court's *Scheduling Order* sets a deadline for motions in limine of 28 days before trial, and the defense never sought to confer with the Plaintiff on this issue before that deadline.**

The Court's Final Scheduling Order (Doc. 23), entered two years ago, sets a motion in limine deadline 28 days before trial. While the defense claims to have conferred with the Plaintiff about the dispute surrounding Dr. Floyd and Dr. Hutson, this communication did not take place until December 30,[1] well after the Court's motion in limine deadline. For this reason alone, the Defendants' motion should be denied.

2. **The timely-disclosed medical records of Dr. Floyd and Dr. Hutson gave fair warning as to what their testimony would be, and their testimony complied with Fed. R. Evid. 703.**

The purpose of Fed. R. Civ. P. 26 and Fed. R. Evid. 702 is to make the opinions and facts held testifying expert witnesses known to opposing parties. The discovery responses and medical records circulated to the defense before the first trial accomplished this. Specifically, the Plaintiff circulated two narrative reports from Dr. Hutson to the defense that directly address causation;[2] an x-ray report ordered by Dr. Hutson that directly addresses nature, extent, and permanency of

---

[1] *See* attached Exhibit 1, correspondence from defense counsel dated December 30, 2011, concerning the instant issues regarding Dr. Floyd and Dr. Hutson.

[2] *See* attached Exhibits 2 and 3, narrative reports from Dr. Hutson.

injury;[3] and the medical records of Dr. Floyd indicate his diagnosis of shoulder and neck pain secondary to a motor vehicle accident.[4] In his discovery responses, the Plaintiff identified that he would be calling treating physicians "to testify about the Plaintiff's examination, diagnosis, treatment, prognosis, [and] permanent impairment <u>caused by the collision in this case</u>, and future medical expenses."[5]

Notably, no motion to compel was ever filed, nor was any other objection timely raised concerning the adequacy of these responses. These records gave ample notice to the defense[6] that these two treating physicians would be testifying about causation of the Plaintiff's injuries and the need for future treatment. The Court should thus rule that the Plaintiff properly complied with Fed. R. Civ. P. 26(a)(2), and that any argument to the contrary has long since been waived.

The defense's current proclamation of surprise is belied by the utter failure of the defense to object to the testimony of either Dr. Hutson or Dr. Floyd at trial on the basis of surprise or noncompliance with Fed. R. Civ. P. 26(a)(2). Dr. Hutson testified live at trial, and no objections were made to questions seeking to qualify Dr. Hutson as an expert witness.[7] Likewise, the trial transcript dealing with Dr. Floyd's appearance by deposition shows that the defense agreed to play the deposition as designated by the parties without ruling on any objections made during the

---

[3] *See* attached Exhibit 4, medical report dealing with permanent loss of motion segment integrity showing Dr. Hutson as the referring/ordering physician.

[4] *See* attached Exhibit 5, Dr. Floyd record.

[5] *See* attached Exhibit 6, at response to Interrogatory No. 15, dated June 25, 2010.

[6] These records are bates labeled and were disclosed as of June 25, 2010. *See* Exhibit 6 at Plaintiff's response to request for production No. 31, which identifies bates-labeled documents produced during discovery.

[7] *See, e.g.*, attached Exhibit 7, excerpts from jury trial transcript at pp. 309–16. There were some objections to Dr. Hutson's live testimony concerning various medical and chiropractic issues, which the Court ruled upon from the bench.

deposition.[8] At no time did the defense object to Dr. Floyd's testimony on the basis of surprise or lack of proper identification of an expert witness.[9] Furthermore, the defense designated Dr. Floyd's testimony concerning surgery, yet did so without making such designations contingent upon rulings on any objection.[10]

      As to the defense's new accusations that Dr. Floyd's testimony was beyond appropriate bounds, the defense had ample notice that Dr. Floyd was the Plaintiff's treating physician and referred the Plaintiff out to other doctors for treatment of his injuries sustained in the wreck that forms the basis of this case. Dr. Floyd referred the Plaintiff to River Valley Musculoskeletal Center; an orthopedic surgeon, Dr. Stewart; and an Open MRI center in Hot Springs.[11] These referrals led, in turn, to additional referrals to a massage therapist, a neurosurgeon, and a pain management doctor. Dr. Floyd, as the primary care physician, made these referrals in order to provide the Plaintiff with treatment for his injuries. All of these records were timely produced to the defense before Dr. Floyd's deposition, and no objection has ever been raised to the production of the records within Dr. Floyd's treatment referral chain. As the coordinator of the Plaintiff's treatment, Dr. Floyd was within the parameters of a treating physician when he testified about treatment by the people to whom he referred the Plaintiff.

---

[8] *See* attached Exhibit 7, excerpts from jury trial transcript at pp. 181–85.

[9] The Defendants' new contention that the lack of objection to Dr. Floyd's testimony was made for the purpose of a video-editing accommodation is nothing more than a self-serving statement devoid of any supporting proof whatsoever.

[10] The Defendants' designations of Dr. Floyd's deposition were filed for record as Doc. 41. Attached Exhibit 8 contains the transcript of Dr. Floyd's deposition; the Plaintiff's designations are highlighted in red, and the defense's designations are highlighted in orange. The designated testimony elicited from the defense concerning surgery appears on pp. 92–93, among others.

[11] *See* attached Exhibit 9, demonstrative chart showing Dr. Floyd's referrals to other doctors and supporting medical records that were disclosed to the defense during discovery.

The relief the defense seeks, in part, is to prohibit Dr. Floyd from relying on the medical records of other physicians. However, Fed. R. Evid. 703 shows the relief to be unwarranted. That rule provides that an expert may rely on data from other sources that is commonly used in his field, regardless of admissibility. The advisory committee notes to Fed. R. Evid. 703 address this precise situation:

> **[A] physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays.** Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. **The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.**

All of Dr. Floyd's testimony dealt either with personal examinations or referrals he made as part of the Plaintiff's medical treatment for the injuries sustained in the crash, and this testimony was entirely appropriate.

In sum, the defense had ample notice of Dr. Hutson and Dr. Floyd's opinions and the records on which they were based. The defense cross-examined both treating doctors at length on their opinions, and never objected to these opinions or to compliance with Fed. R. Civ. P. 26 until less than two weeks before the second trial of this matter. This tactical decision to withhold objections until just before retrial should be rejected as an untimely attempt to gain an unfair advantage, and the Court should deem these arguments waived.

3.  **The stipulation entered into by the parties authenticates the challenged medical records, rendering them admissible as contemplated by the advisory committee notes to Fed. R. Evid. 703.**

The defense attacks the records by other treating doctors, which were relied upon by Dr. Floyd and Dr. Hutson, as hearsay. However, these records are subject to a stipulation for the authentication of medical records that was filed as Doc. 43. This stipulation states:

> The attorneys for the respective parties agree to the introduction of any medical records pertaining to the Plaintiff in this case as being business records kept in the ordinary course of business, without the necessity of foundation testimony or any testimony dealing with the authenticity of the medical records[.]

The effect of this stipulation is to place these medical records within the hearsay exceptions for medical records (Fed. R. Evid. 803(4)) and business records (Fed. R. Evid. 803(6)). The very purpose of this stipulation is to avoid the "expenditure of substantial time in producing and examining various authenticating witnesses." Fed. R. Evid. 703 Notes of Advisory Committee on Rules. This stipulation is binding upon retrial, and it insulates the medical records of referral physicians from the instant hearsay challenge made by the defense.[12]

4.  **The *Brooks* case gave an opportunity to cure an alleged defect in Fed. R. Civ. P. 26 expert disclosures, which did not and cannot happen here due to the last-minute nature of the defense's objection.**

The defense cites *Brooks v. Union Pac. R.R.*, 620 F.3d 896 (8th Cir. 2010) ("*Brooks*") and asserts that it controls the Fed. R. Civ. P. 26(a)(2) issue. However, the *Brooks* case is distinguishable for two reasons. First, in that case, the defense timely raised an objection to the adequacy of the plaintiff's Fed. R. Civ. P. 26(a)(2) disclosures, which occurred on a motion for summary judgment after the expert discovery period ended, but before trial. *Brooks*, 620 F.3d at

---

[12] The issue of stipulations being binding upon retrial was briefed in the Plaintiff's *Motion to Enforce Agreement Concerning Testimony of Mark A. Floyd*.

898. As discussed above, no timely objection was ever raised in this case. Instead, the defense already agreed to designate deposition testimony of Dr. Floyd and to authenticate medical records that had been attached to Dr. Floyd's video deposition.[13] Furthermore, the defense made no objections based upon either the *Brooks* case or Fed. R. Civ. P. 26(a)(2) concerning the testimony of Dr. Terry Hutson. Because no timely objection was raised, the Defendants' Fed. R. Civ. P. 26(a)(2) argument has been waived.

Second, in the *Brooks* case, the trial court gave the plaintiff a reasonable opportunity to correct what the court identified as a deficiency and informed the plaintiff that the case would be dismissed unless a specific correction was made. *Brooks*, 620 F.3d at 898. After being given such opportunity, the plaintiff failed to make a correction, and his case was dismissed. *Id.*

In this case, the Court's Final Scheduling Order entered January 19, 2010 (Doc. 23) states: "Except in extraordinary circumstances, problems with discovery which are not brought to the Court's attention in time for the opponent to make a proper response and the Court to make an informed ruling before the close of discovery will be deemed waived." The alleged deficiency in this case was just raised for the first time, eleven months after the alleged prejudice occurred and on the eve of the retrial. This hardly gives a reasonable opportunity for the Plaintiff to correct the alleged deficiency, even if the Court were to deem such a correction appropriate. For this independent reason, the *Brooks* case is distinguishable, and the defense's objection based on Fed. R. Civ. P. 26(a)(2) should be deemed waived as untimely.

The defense's attempt to limit the testimony of the Plaintiff's treating physicians appears to be retaliation for the Plaintiff's opposition to two new defense experts disclosed within a

---

[13] *See* Doc. 43, stipulation concerning medical records, which was signed on February 14, 2011, several days after Dr. Floyd's February 9, 2011 video deposition.

month of the retrial.[14] Long ago, the defense could have asked the Court to reopen discovery to address the Fed. R. Civ. P. 26(a)(2) issue and to add its own new experts, but did not. Instead, the defense waited until the eve of retrial to identify two new experts and raise an alleged procedural defect, hoping that it could force an agreement on new experts using its brand-new Rule 26(a)(2) argument as leverage. Now, faced with the exclusion of those untimely-identified experts, the defense seeks to portray the Plaintiff as a bad actor who tricked the defense at the first trial. The facts that the defense (1) must backtrack on several previous stipulations and designations in order to do so, and (2) cannot point to any prior allegations of surprise or discovery noncompliance, clearly signal it is the defense that engages in dilatory conduct.

5.  **The defense makes no credible showing that the alleged procedural defect required it to try and retain two new defense experts.**

Despite the fact that no contemporaneous objection was made to either doctor's expert testimony, the defense now contends that the material from Dr. Floyd and Dr. Hutson's testimony was so prejudicial that it required rebuttal proof. The deposition testimony of their original expert, Dr. Bernie McCaskill, as well as the very proof the defense sought to use upon retrial, shows the falsity of this argument.

The defense claims that it was precluded from using Dr. Bernie McCaskill's deposition because it was rendered obsolete by Dr. Floyd's testimony. This argument is not credible. Dr. McCaskill's evidentiary deposition addressed all recommendations of treatment and surgery in

---

[14] *See* attached Exhibit 10, email from defense counsel dated 1/9/12 stating, "In my filing last week, I proposed a solution: let both sides' experts testify rather than strike your witnesses. You didn't want that."

the medical records,[15] which are the same records upon which Dr. Floyd relied. The defense does not explain how Dr. McCaskill's testimony was rendered obsolete, because it cannot — Dr. McCaskill had ample opportunity to address the medical issues presented in this case.

If Dr. McCaskill's deposition had been rendered obsolete as the defense claims, it would stand to reason that the defense would have raised this point before or at the first trial. Instead of raising objections, however, the defense filed designations (Doc. 37) for Dr. McCaskill's deposition and listed him on the defense witness list[16] after Dr. Floyd's deposition was taken. The defense even said it was going to call him during voir dire.[17] No objections were ever raised at trial concerning the claimed obsolescence of Dr. McCaskill's testimony, and the defense designated large portions of Dr. Floyd's testimony that it now claims rendered Dr. McCaskill's testimony obsolete.

The real reason the defense makes these claims is to try and gain some leverage to limit the testimony of the Plaintiff's treating physicians.[18] In order to do this, the defense claims that its new experts somehow rehabilitate the alleged obsolescence of Dr. McCaskill's testimony. One of those experts, Dr. McAlister, lists the materials he reviewed. Of these materials, not one thing was dated after Dr. McCaskill's February 7, 2011 testimony.[19] Simply put, Dr. McAlister

---

[15] *See* attached Exhibit 11, McCaskill evidentiary deposition, in which Dr. McCaskill discusses his opinions on causation (pp. 30, 40), future treatment (pp. 34–35), surgery (pp. 37–40), and work restrictions (pp. 40–41) during direct examination by the defense.

[16] *See* attached Exhibit 12, Defendants' witness list dated February 11, 2011.

[17] *See* Exhibit 7, excerpts from jury trial transcript at p. 18.

[18] *See* Exhibit 10, email from defense counsel dated 1/9/12 stating, "In my filing last week, I proposed a solution: let both sides' experts testify rather than strike your witnesses. You didn't want that."

[19] Dr. McAlister's report was attached as Exhibit 2 to Plaintiff's motion to exclude new experts (Doc. 80-2).

only reviewed medical records that all doctors and parties had in their possession well before evidentiary depositions taken for the first trial of this matter. The statement that Dr. McAlister's report is rebuttal to "surprise evidence" is exposed as a falsity by the contents of the report itself.

Similarly, Dr. Earl Peeples' new defense report cannot be fairly characterized as rebuttal.[20] His conclusions at pp. 8–13 of his report contain just two references to trial testimony, both by Dr. Hutson. Both references discuss instability in the cervical spine. Dr. Hutson's opinions relating to instability of the cervical spine stem, in part, from a medical test he ordered for the Plaintiff. This record, which was admitted into evidence at the first trial, reflects a 17.36º measurement that objectively proves loss of motion segment integrity in the cervical spine. The record also identifies that a loss of motion segment integrity causes instability. This record was provided with the June 25, 2010 disclosures to the defense.[21] For this reason, even though Dr. Peeples characterizes his conclusions as addressing Dr. Hutson's testimony, the defense had the medical reports forming the basis of Dr. Hutson's opinions long before the first trial of this matter. Because all necessary information for Dr. Peeples to prepare his report was available before the first trial, the Court should reject the contention that Dr. Peeples was hired to rebut new, surprise testimony during the first trial.

## CONCLUSION

Claims of surprise are particularly not credible when made over eleven months after the first trial of this matter. The instant motion appears to be an attempt to punish the Plaintiff for opposing the defense's desire to add two new experts to this case a month before trial. Indeed,

---

[20] Dr. Peeples' report was attached as Exhibit 1 to Plaintiff's motion to exclude new experts (Doc. 80-1).

[21] *See* attached Exhibit 4, medical report dealing with loss of motion segment integrity showing Dr. Hutson as the referring/ordering physician, which supports his diagnosis of permanent injury.

since the defense waited until the eve of the retrial to make claims of surprise and to identify new witnesses needed to rebut allegedly surprising information, the more reasonable inference is that the defense is seeking to gain an unfair advantage by ignoring previous stipulations, designations, and agreements on medical testimony.

The defense can hardly be surprised about (1) records it already had, (2) testimony it agreed to present to the jury, or (3) alleged procedural defects it failed to raise before the first trial. The defense's attempt to lay blame on the Plaintiff is nothing more than an attempt to mask its own failure to timely produce new experts. Any prejudice to the Defendants is their own fault, and they have failed to demonstrate otherwise. It is the Defendants who engage in surprise by first raising an issue that could have been raised many months or years ago, when the Plaintiff would have had an opportunity to cure any alleged procedural defect.

The Defendants' arguments based upon Fed. R. Civ. P. 26(a)(2) have been waived by their failure to timely object either before or at the first trial. The Court should deny the Defendants' untimely motion in limine in its entirety.

Respectfully submitted,

/Nathan Price Chaney/
Don P. Chaney, AR BIN 78027
Nathan P. Chaney, AR BIN 2004109
CHANEY LAW FIRM, P.A.
P.O. Box 1405
Arkadelphia, Arkansas 71923
Telephone:   (870) 246-0600
Facsimile:    (866) 734-0971

Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 9, 2012, I served the foregoing document upon the opposing party or parties listed below by operation of the Court's electronic filing system:

| | |
|---|---|
| Mr. David L. Sargent<br>Ms. Megan Burchfield<br>HERMES SARGENT BATES, LLP<br>901 Main Street, Suite 5200<br>Dallas, Texas 75202<br>david.sargent@hsblaw.com<br>meggan.burchfield@hsblaw.com | Mr. Gregory T. Jones<br>Mr. Troy A. Price<br>WRIGHT, LINDSEY & JENNINGS LLP<br>200 West Capitol Avenue, Suite 2300<br>Little Rock, Arkansas 72201-3699<br>gjones@wlj.com<br>tprice@wlj.com |
| Mr. Brent M. Langdon<br>LANGDON DAVIS<br>5902 Summerfield, Ste. A<br>Texarkana, Texas 75505-5547<br>blangdon@ldatty.com | |

                          /Nathan P. Chaney/
                          Nathan P. Chaney